2025 IL App (4th) 250138-U

NO. 4-25-0138

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FILED
October 30, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MARGARET EAGLETON, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Jersey County |
| ROBERT MUELLER and ELIZABETH MUELLER, | ) | No. 03CH50 |
|     Defendants | ) | |
| (Robert Mueller, Defendant-Appellant). | ) | Honorable |
| | ) | Allison Lorton, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Steigmann and Vancil concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's judgment plaintiff adversely possessed and was entitled to ownership of the 5.09-acre tract at issue was not against the manifest weight of the evidence.

¶ 2   In October 2003, plaintiff, Margaret Eagleton, filed a complaint seeking ownership of a 5.09-acre parcel of property based on a claim she and her predecessors in interest had adversely possessed the real estate for over 20 years. Plaintiff named the legal titleholders of the property, Robert Mueller and Elizabeth Mueller (now deceased), as defendants. In January 2025, the trial court's written order was filed. The court found plaintiff met her burden of establishing each element of her adverse possession claim by clear and convincing evidence and quieted title to the 5.09-acre parcel of land in plaintiff's name.

¶ 3   Defendant Robert Mueller appeals, arguing the trial court erred because he presented evidence a dirt road, which was accessible to and used by the public, ran through the

5.09-acre parcel during the 20-year period plaintiff claimed she and her predecessors in interest adversely possessed the property. In addition, because the road no longer existed, defendant argues plaintiff could not establish she is entitled to any of the 5.09-acre parcel because she cannot establish the specific location of the road and the specific boundaries of the allegedly adversely possessed land. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5          In May 1988, plaintiff purchased a 40-acre parcel of land in Jersey County, which the trial court referred to as Gledhill Farm. In September 2002, defendants purchased a 40-acre parcel of land immediately north of Gledhill Farm. The parcel defendants purchased was landlocked. In July 2003, defendants purchased from John Hancock Life Insurance Company a 5.09-acre parcel of land immediately east of Gledhill Farm. Because this court included the legal descriptions for these three parcels of ground in a prior decision in this case (see *Eagleton v. Mueller*, No. 4-09-0147 (2010) (unpublished order under Illinois Supreme Court Rule 23)), we do not repeat the legal descriptions here.

¶ 6          In October 2003, plaintiff filed a complaint against defendants, alleging she and her predecessors in interest had "on a continuous basis for a period of time in excess of 20 years openly, visibly, notoriously and exclusively farmed all the real estate found West of the drainage ditch." The drainage ditch was the eastern border of the 5.09 acres at issue. According to plaintiff's complaint, she had acquired the 5.09-acre parcel of ground by adverse possession. Plaintiff asked the trial court to forever bar defendants from asserting any claim whatsoever to the 5.09 acres and sought a preliminary injunction to stop defendants from entering the 5.09 acres.

¶ 7                              A. Preliminary Injunction

¶ 8          In November 2003, the trial court granted plaintiff's request for a preliminary

injunction. We note the record before this court does not include a transcript of the hearing on the motion. The court's order enjoined defendants from entering the 5.09 acres.

¶ 9        In December 2003, defendants filed a motion to dissolve the preliminary injunction. In January 2004, the trial court denied defendants' motion. Defendants appealed. This court's order from 2004 states:

> "At the hearing on the motion for preliminary injunction, Richard Eagleton testified he is plaintiff's father, attorney, and manages the farm on the property in question. Richard testified that when plaintiff purchased the property, the seller told them the deed would not reflect the total acreage being farmed 'because the other part was by possession and I [(Richard)] made sure that it was more than 20 years.' Richard testified the five-acre tract had been farmed by plaintiff or her tenants since plaintiff purchased the property in 1988. Brett Gettings testified he farms the property owned by plaintiff, including the five-acre tract. Brett testified he is familiar with who farmed plaintiff's land prior to plaintiff's purchase and that the previous farmer also farmed the five-acre tract although it was owned by another. Robert Mueller testified that when he purchased the five-acre tract, he knew his purchase was subject to the rights of any persons in possession." *Eagleton v. Mueller*, No. 4-04-0077, 2-3 (2004) (unpublished order under Illinois Supreme Court Rue 23).

This court noted the merits of the preliminary injunction were not before it, only the trial court's refusal to dissolve the preliminary injunction. *Id.* at 5. This court affirmed the trial court's refusal to dissolve the preliminary injunction. *Id.* at 1.

¶ 10                              B. Summary Judgment

¶ 11        In July 2007, plaintiff filed a motion for summary judgment on her claim she had acquired the 5.09-acre parcel by adverse possession. The motion does not appear to be part of the record in this appeal. However, according to this court's prior opinion from January 2010, plaintiff cited testimony provided by Richard Eagleton, Brett Gettings, and William Gettings at the October 2003 hearing on plaintiff's motion for a preliminary injunction. *Eagleton*, No. 4-09-0147, at 7-14.

¶ 12        Richard testified he managed the farm for plaintiff and the 5.09 acres at issue were being farmed and cultivated all the way to the main drainage ditch. *Id.* at 8. Brett testified he had aways cultivated the Gledhill Farm property and the 5.09 acres at issue as far as the main ditch since 1988. *Id.* at 9. Brett also testified he had been farming in the area since 1979. *Id.* Brett stated he had personal knowledge that John Powers, who farmed the property before plaintiff purchased it, also farmed the property all the way to the main ditch. *Id.* According to Brett's testimony, his great uncle told him a field road had run along the main ditch on the 5.09-acre parcel at one point in time. *Id.* at 10-11. However, Brett, who was 44 at the time of his testimony, stated the farm road was not present during his lifetime. *Id.* William testified he was 75 years old, had farmed in the vicinity of the land at issue since 1950, and was familiar with the 5.09 acres at issue. *Id.* at 11-12. William testified John Powers farmed what was now plaintiff's property all the way to the main ditch before plaintiff purchased the land. *Id.* at 12. According to William, a farm road had run north and south along the ditch in the past. *Id.* However, the road had not been there since John Powers started farming the ground, which was in the 1940s. *Id.*

¶ 13        On July 18, 2008, defendants filed a response to plaintiff's motion for summary judgment. Once again, defendant's response is not part of the record in this appeal. However, again relying on this court's January 2010 order in this case, defendants attached affidavits from Charles Powers, William Gimlin, and Frank Gimlin to their response. *Id.* at 13-16. The affidavits

referenced a map from Charts of the Illinois Waterway, a book that was issued by the United States Army Engineer District, Corps of Engineers, and dated April 1974. Defendants claimed this map showed a public road went across the 5.09 acres. The affidavits from the three men indicated a road that was approximately 15 feet wide ran along the west side of the drainage ditch on the 5.09 acres, the road was not tilled for crops, and the road remained on the property until at least 1988. *Id.* at 15-16.

¶ 14        In September 2008, the trial court held a hearing on plaintiff's motion for summary judgment. Once again, the record before this court does not include a transcript of the hearing. According to this court's January 2010 order, the trial court concluded the alleged road made no difference with regard to its analysis of whether summary judgment was appropriate and granted plaintiff's motion for summary judgment. *Id.* at 21.

¶ 15        Defendants appealed the summary judgment ruling, and this court reversed the order and remanded the case for further proceedings because it found a genuine issue of material fact regarding the existence of the road on the 5.09-acre parcel of land during the relevant 20-year period based on the affidavits of Charles Powers, William Gimlin, and Frank Gimlin, and the map from Charts of the Illinois Waterway. *Id.* at 26-28, 36. In addition, the court noted, if the alleged road existed during the 20-year period of adverse possession and was then destroyed and the location of the road could not be definitively determined, it was unclear how plaintiff could prove what portion of the property she and her predecessors in interest adversely possessed. *Id.* at 31. According to this court's order, "[I]f all a claimant can do is take a guess at where the boundary of the land is that the claimant or the claimant's predecessor adversely possessed, the claimant fails to prove any adverse possession at all and acquires no title. An approximation will not suffice." *Id.* at 34.

¶ 16                                    C. Bench Trial

¶ 17         On April 26, 2023, plaintiff filed her final pretrial memorandum, stating the only contested issue was whether a road existed on the 5.09-acre parcel during the alleged period of adverse possession and, if a road existed, the boundaries of the road. The next day, defendant filed his final pretrial memorandum, noting his codefendant and mother was no longer living. Defendant stated in his memorandum that plaintiff and her predecessors did not farm or otherwise use the 5.09 acres as required by all the elements for adverse possession due in part to an existing road on the property.

¶ 18         On May 10, 2024, the trial court held a bench trial. During the trial, the court indicated the parties agreed they would provide the court with any references to testimony and affidavits from the preliminary injunction proceedings.

¶ 19         Richard Eagleton, plaintiff's father, testified he was familiar with the property in dispute. He had been going to his family's farm in the area since the 1930s and had been managing his family's farm since the late 1950s. Richard testified plaintiff purchased the Gledhill Farm and the 5.09 acres at issue in 1988. Richard then managed the Gledhill Farm for plaintiff. He hired Greene Farm Management to do the day-to-day work on the farm. According to Richard, William Gettings had farmed both the Gledhill farm and the 5.09 acres in dispute. However, after William died, Brett Gettings, William's son, started farming Gledhill and the 5.09 acres and was still farming the property.

¶ 20         Richard indicated it was his understanding the trial court was also going to consider his testimony from the hearing on the preliminary injunction. The court indicated an agreement had been made by the parties. Richard then stated he was not going to repeat what he said at that

hearing. Plaintiff's counsel asked Richard whether he could explain why plaintiff's land was sometimes referred to as 40 acres, 42 acres, and 45 acres. Richard responded:

> "The fact that the federal government has always called this 42 tillable acres tells us—answers one question and raises another. The question of whether Margaret was farming any of that five acres as if—because she has 40 acres of hers. Not 40 tillable. 40 acres plus the five would be 45 acres but only 42 was tillable. So, the fact that there's 42 shows that the farming went beyond the borderline of her 40 but it doesn't say exactly why. Well, the reason is on this map you'll see on the south end is the township road and that takes some of the land out of being tillable and then if you look up on the other side of Margaret's 40 to the north there's a lateral drainage ditch there and part of her land is taken up by the ditch. So, that explains why its 42 acres, not 45."

¶ 21 James Powers, 62 years of age, testified he was familiar with plaintiff's property and the 5.09 acres in dispute. According to James, his father, John, farmed the property for 40 years, and James started helping his father farm the ground in 1965 and continued helping until 1988. While working the land from 1965 to 1988, James never observed a road of any kind on the 5.09-acre parcel. According to James, "We farmed all the way straight through to the ditch." James's uncle, Charles Powers, did not farm the property with John. James testified his father and Charles did not get along. He had no personal knowledge of Charles being on the 5.09 acres. James stated Charles and another uncle "farmed up the road," north but not adjacent to the 5.09-acre parcel. According to James, Russ Sinclair farmed the land across the ditch from the 5.09-acre parcel, was aware John farmed the 5.09 acres, and never told John not to farm it.

¶ 22    On cross-examination, James acknowledged he testified at a deposition that his father and Charles had farmed together but not in a partnership. Because the brothers did not get along, John got his own farm. As for whether a road existed on the subject parcel in 1961, James acknowledged he would not know because he was a newborn. When asked about Charles's affidavit, which stated a road open to the public and used by both Charles and John existed on the subject parcel from 1951 until 1988, James said someone would have to talk to his father and Charles as to whether a road existed on the property before 1965.

¶ 23    On redirect examination, James testified Charles never farmed the 5.09 acres at issue, either alone or with John. According to James, Charles was wrong when he stated a road ran across the 5.09 acres during the period from 1951 to 1988. According to James, during the years he worked the ground, he did not remember a road on the 5.09-acre parcel.

¶ 24    Richard and James were the only witnesses plaintiff called at the bench trial. However, as mentioned earlier, the parties agreed the trial court could consider testimony from the hearing on the preliminary injunction.

¶ 25    Frank Gimlin was defendant's first witness. Frank testified he was 68 and lived in Nutwood, Illinois, from approximately 1984 to 1988. He had provided defense counsel with an affidavit with an attached map indicating a road ran along the drainage ditch on the 5.09-acre parcel when he lived in Nutwood. The map came from a book called Charts of the Illinois Waterway, which was prepared by the United States Army Engineer District, Corps of Engineers. Frank testified the dotted line on the map symbolized a dirt road off Gettings Road that went north across the 5.09 acres along the drainage ditch. Frank testified he fished out of the drainage ditch from the dirt road. According to Frank, no crops were planted on the road where he was fishing.

¶ 26    During cross-examination, plaintiff's counsel asked Frank about testimony he

provided at a deposition in June 2023. The trial court admitted plaintiff's exhibit No. 2, which was a map from Frank's deposition where he drew with a red pen the location of the alleged dirt road going across the 5.09 acres. Frank did not draw the alleged road going along the ditch. Frank testified he had never farmed the property at issue and had no knowledge who farmed the ground from 1984 to 1988.

¶ 27 On redirect examination, Frank testified the road ran along—a "little ways off" but "pretty close" to—the drainage ditch. Then, on recross-examination, Frank admitted he had identified the location of the alleged road in two different locations. Gimlin also testified he did not know what year the map from Charts of the Illinois Waterway was prepared. Later, Frank testified the book had an April 1974 date.

¶ 28 Defendant then testified on his own behalf. Defendant stated his mother, who had been named as a defendant, had passed away in December 2016. Upon his mother's passing, he became the sole titled owner of the 5.09 acres. He purchased the 5.09 acres so he could access his 40 acres of ground north of Gledhill Farm from the south. He received a special warranty deed for the 5.09 acres stating the property was conveyed as is, title to the acreage was not warranted by the grantor, and the property was conveyed subject to the rights of any tenants or lessees or any persons in possession. Defendant also testified he knew the 40 acres he purchased was landlocked at the time he purchased that land.

¶ 29 After defendant's testimony, plaintiff's counsel asked the trial court to consider plat maps for the area from 1950, 1965, and 1973, which had been attached to plaintiff's final pretrial memo.

¶ 30 In a written order filed on May 10, 2024, the trial court indicated it admitted into evidence plaintiff's exhibit No. 1, which was a "July 13, 2003[,] Plat of Survey." The court also

stated it admitted plaintiff's exhibit No. 2, which was a copy of the same plat of survey but also included red line markings made by Frank Gimlin. The Court also admitted a 1934 U.S. geological survey map and portions of Jersey County plat books from 1950, 1965, and 1973.

¶ 31    As for defendant's evidence, the trial court admitted defendant's exhibit A, which was Frank's July 16, 2008, affidavit with the attached and modified map. The court ruled the map was admitted as a demonstrative exhibit highlighting where Frank testified he recalled the location of a road. The court also indicated it admitted into evidence the 1974 version of Charts of the Illinois Waterway, a trustee's deed from September 25, 2002, and a special warranty deed from July 23, 2003. In addition, the court noted it received transcripts from court proceedings in September 2008 and October 2003.

¶ 32    D. Trial Court's Decision

¶ 33    On January 7, 2025, the trial court issued a written order and quieted title to the disputed 5.09-acre parcel of land to plaintiff, ruling plaintiff established each element of her adverse possession claim through clear and convincing evidence. The court indicated it had reviewed the parties' respective closing arguments, the trial testimony, and the transcript of the court hearing in October 2003 on plaintiff's motion for a preliminary injunction.

¶ 34    The trial court noted plaintiff did not object to it considering affidavits from Charles Powers, William Gimlin and Frank Gimlin, which defendant had submitted in opposition to plaintiff's prior motion for summary judgment. Plaintiff had argued the affidavits of Charles Powers and William Gimlin should not be given much weight because they had died before the bench trial and were never subject to cross-examination by plaintiff. The court agreed, indicating it was giving little weight to the affiants whose testimony was not proffered to the court.

¶ 35 As for Frank Gimlin's testimony, the trial court stated it also gave it little weight, noting Frank did not farm the ground, did not live on the ground, and based his testimony on his periodic experiences fishing out of the drainage ditch between 1984 and 1988. Further, the court noted Frank had provided inconsistent locations for the alleged road.

¶ 36 On the other hand, the trial court noted plaintiff had presented testimony either at the hearing on the preliminary injunction or the bench trial from individuals who had actually farmed the land at issue. James Powers, John Powers's son, testified his father farmed Gledhill farm and the 5.09-acre parcel to the ditch. James recalled working the disputed land with his father as early as 1965 and did not remember a road going across the 5.09 acres between 1965 and 1988. Brett Gettings testified he started farming the disputed land in 1988 and never saw a road on the 5.09 acres from 1988 to 2003, when the case was filed. William Gettings also testified no road had existed on the disputed land since at least 1948, when John Powers started farming the property.

¶ 37 The trial court also noted the Jersey County plat books from 1950, 1965, and 1973 did not show a road on the disputed land. As for the map from Charts of the Illinois Waterway dated 1974, the court gave the map little weight, stating the intent of the book was to map waterways, not roadways. Even if the markings on the map, which are not identified in the book's legend as symbolizing a road, were meant to signify a roadway going through the 5.09 acres at some point in time, the court stated the map does not confirm the existence of a roadway going through the property after 1974. As a result, according to the court, "even if taken as confirmation of the existence of the roadway, the map from 1974 does not impact the statutory twenty-year adverse possession period of 1983 to 2003." The court then stated, "Having found that no roadway existed during the period of 1983 to 2003, the statutory period for adverse possession, the court

finds that the eastern boundary of the tract possessed by Plaintiff is defined, the current drainage ditch, and subject to exact determination ***."

¶ 38        The trial court indicated this was a final and appealable order and there was no just reason to delay appeal or enforcement of the court's order.

¶ 39        This appeal followed.

¶ 40                                  II. ANALYSIS

¶ 41        We would be remiss if we did not initially address two issues: the extraordinary amount of time this case has been pending and the apparent absence of certain parts of the trial record from the record on appeal. First, the record fails to provide any explanation why these proceedings took over two decades to conclude. Even accounting for multiple appeals, this is an extraordinary delay. We do not intend this comment as a criticism of Judge Lorton, who was only assigned this case sometime after September 9, 2021.

¶ 42        However, given the time standards now in place for managing cases, we take this opportunity to encourage trial courts to set forth on the record the basis for repeated continuances. Again, we note Judge Lorton did indicate on the record why some continuances and delays occurred during the relatively brief period she presided over this case.

¶ 43        Second, while this court can address the merits of this appeal, the record is missing numerous documents the parties refer to in their briefs. While this court was able to rely on its prior orders for information not included in the record in this appeal, we caution counsel from relying on documents and exhibits that are not in the record.

¶ 44        Illinois Supreme Court Rule 321 (eff. Oct. 1, 2021) provides:

> "The record on appeal shall consist of the judgment appealed from, the notice of appeal, and the entire original common law record, unless the parties

stipulate for, or the trial court, after notice and hearing, or the reviewing court, orders less. The common law record includes every document filed, judgment, and order entered and any exhibit offered and filed by any party. Upon motion the reviewing court may order that other exhibits be included in the record. The record on appeal shall also include any report of proceedings prepared in accordance with [Illinois Supreme Court] Rule 323[ (eff. July 1, 2017)]. There is no distinction between the common law record and the report of proceedings for the purpose of determining what is properly before the reviewing court."

It is the appellant's burden to present a sufficiently complete record to the appellate court. *Webster v. Hartman*, 309 Ill. App. 3d 459, 460 (1999). "[T]his court will resolve any doubts that arise from an incomplete record against the appellant." *Id.*

¶ 45    On appeal, defendant argues the trial court erred by ruling plaintiff had acquired the 5.09-acre parcel via adverse possession. Defendant asserts plaintiff could not have established she and her predecessors in interest had adversely possessed the entire 5.09-acre parcel because a dirt road, which was accessible to and used by the public, ran along the west side of the drainage ditch on the 5.09-acre parcel during the alleged 20-year period of adverse possession. Further, according to defendant, because a road existed on the parcel that has since been destroyed, plaintiff cannot establish the specific boundaries of the 5.09-acre parcel she and her predecessors in interest might have adversely possessed. As a result, defendant argues plaintiff is not entitled to any of the 5.09 acres via adverse possession.

¶ 46                        A. Standard of Review

¶ 47    We will not disturb the trial court's findings in an adverse possession case unless the findings were against the manifest weight of the evidence. *Brandhorst v. Johnson*, 2014 IL

App (4th) 130923, ¶ 38. " 'A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence.' " *Id.* (quoting *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 70).

¶ 48                                    B. Principles of Adverse Possession

¶ 49        All presumptions in adverse possession cases are in favor of the title owner of the property. *Id.* The party claiming ownership of the property via adverse possession must establish each element of her claim by clear and unequivocal evidence. *Id.*

> "To establish title by adverse possession, the claimant must prove possession of the property for the entire 20-year statutory period (735 ILCS 5/13-101 (West 2010)), 'and that possession must have been "(1) continuous; (2) hostile or adverse; (3) actual; (4) open, notorious, and exclusive; and (5) under claim of title inconsistent with that of the true owner." ' *Davidson v. Perry*, 386 Ill. App. 3d 821, 824-25 (2008) (quoting *Gacki v. Bartels*, 369 Ill. App. 3d 284, 292 (2006)). Further, although not one of the five elements of possession, the claimant must also prove 'by clear and convincing evidence the exact location of the boundary line to which they claim[ ].' *Schwartz v. Piper*, 4 Ill. 2d 488, 494 (1954)." *Id.* ¶ 37.

¶ 50                                    C. Defendant's Arguments

¶ 51        Pointing to this court's order reversing the trial court's summary judgment ruling, defendant initially asserts this court made comments and had concerns about the sufficiency of plaintiff's evidence to establish her adverse possession claim. We disagree.

¶ 52     In the prior order, this court was not judging the sufficiency of plaintiff's evidence and specifically stated, "It is not our province to decide the merits of this case, and we do not wish to be understood as doing so; we are merely pointing out a problem that precludes a summary judgment in plaintiff's favor." *Eagleton*, No. 4-09-0147, at 31. Instead of judging the merits of plaintiff's adverse possession claim, this court merely found summary judgment was not appropriate. *Id.* at 1.

¶ 53     As noted in this court's prior order, a

> "trial court should grant a motion for summary judgment only if the pleadings, depositions, admissions, and affidavits on file, viewed in a light most favorable to the opposing party, establish that (1) there is no genuine issue as to any material fact and (2) the moving party is entitled to judgment as a matter of law." *Id.* at 25.

In addition, this court noted a court should only grant a motion for summary judgment if it would be impossible for a reasonable person to draw a different inference from the evidence before the court. *Id.*

¶ 54     This court found a genuine issue of material fact existed as to whether a road ran along the west bank of the main ditch on the 5.09 acres. *Id.* at 26. Affidavits before the trial court from Charles Powers, William Gimlin, and Frank Gimlin all stated the road existed during the alleged 20-year period of adverse possession. The court also pointed to the map from Charts of the Illinois Waterway published in April 1974 as evidence the road existed. According to this court's order, the affidavits from Charles Powers and the two Gimlins and the map from 1974 "flatly contradict[ ] plaintiff's witnesses, who insist that the road had been nonexistent for half a century or longer." *Id.* As a result, this court found a genuine issue of fact existed as to whether a road went across the 5.09-acre parcel of land during John Powers's tenancy at Gledhill Farm. *Id.*

¶ 55        In *dicta*, this court also pointed out a potential problem regarding plaintiff's adverse possession claim if, on remand, the finder of fact determined a road had traversed the 5.09-acre parcel of land at any time during the 20-year period plaintiff claimed she and her predecessors in interest had adversely possessed the land. Citing *Schwartz v. Piper*, 4 Ill. 2d 488, 493-94 (1954), this court stated a party claiming adverse possession "must prove, with reasonable certainty, the location of the boundaries of the tract and that all five elements of adverse possession were fulfilled as to that demarcated tract for the duration of 20 years." *Eagleton*, No. 4-09-0147, at 33-34. This court then described the situation in this case: "In the present case, depending on which set of witnesses one chooses to believe, the eastern boundary is either the main ditch, which is still there, or the road, which, like the old iron fence in *Schwartz*, has been removed without a trace." *Id.* at 34.

¶ 56        On remand, 14 years after this court reversed the summary judgment order, the trial court had to determine which witnesses to believe regarding the existence of the road within the alleged 20-year period of adverse possession at issue. Based on the evidence before it, the court determined the road did not exist on the 5.09 acres during the applicable 20-year period.

¶ 57        According to defendant, the trial court's reasoning was flawed, and its decision was against the manifest weight of the evidence presented. Defendant points to the affidavits of Charles Powers, William Gimlin, and Frank Gimlin which stated the road ran through the 5.09-acre tract and across defendant's 40-acre parcel from 1951 until at least 1988, was open to the public, and was used by the three men. Defendant argues the existence of the map from Charts of the Illinois Waterway published in 1974, the affidavits of the three men, and Frank Gimlin's testimony at the bench trial is proof the road existed on the 5.09-acre parcel of land. Therefore, according to

defendant, the court erred by not giving the information in the three affidavits and Frank's testimony more weight.

¶ 58    Defendant contends the trial court also erred in finding plaintiff's witnesses were credible and compelling when their testimony contradicted the map found in Charts of the Illinois Waterway, the affidavits of Charles Powers, William Gimlin, and Frank Gimlin, and Frank Gimlin's testimony. According to defendant's brief, plaintiff presented no evidence the map from Charts of the Illinois Waterway was incorrect or that the map did not depict a road going through the 5.09-acre parcel.

¶ 59    Finally, defendant asserts Richard Eagleton's testimony in this case shows plaintiff was not farming all of the 5.09-acre parcel. According to defendant's argument, Richard testified plaintiff received title to the 40-acre parcel but did not receive title to the 5.09-acre parcel because the seller claimed he had ownership through "possession." Richard testified the land plaintiff purchased included 42 tillable acres. Defendant argues this shows plaintiff and her predecessors in interest were not farming all of the 5.09-acre parcel. We do not agree the trial court was required to draw this inference.

¶ 60    Defendant's arguments fail to meaningfully address important parts of the trial court's reasoning and plaintiff's evidence. For example, the court gave little weight to Frank Gimlin's testimony at the bench trial because his trial testimony was different than his testimony at his deposition about the location of the alleged road. Moreover, he never farmed the property or lived on the property.

¶ 61    Next, while defendant focuses on the map from Charts of the Illinois Waterway, the trial court also had the plat maps to consider. Further, Charts of the Illinois Waterway did not contain a legend indicating the markings in question signified a road. Even assuming, *arguendo*,

the lines on the map from Charts of the Illinois Waterway indicated a road was on the 5.09-acre parcel of land as of 1974, this is not conclusive evidence of the existence of the alleged road during the 20-year period in question, which was 1983 to 2003. Moreover, defendant does not present any real argument why the trial court would be required, because the road was depicted in the book, to accept the existence of the road as fact when the court found credible the testimony of plaintiff's witnesses, who had actually worked the land and testified a road had not existed on the property since 1948. In addition, Richard Eagleton testified the tillable acreage did not amount to 45 acres because the 40-acre parcel of land was not completely tillable.

¶ 62        At the bench trial, James Powers testified his father, John Powers, farmed the Gledhill Farm and the 5.09-acre parcel at issue up to the drainage ditch for as long as James could remember, which was back to 1965, and no farm road existed on the 5.09-acre parcel during those years. Although he did not testify at the hearing, because of the parties' agreement, the trial court could consider that Brett Gettings testified at the preliminary injunction hearing in 2003 that he farmed the entire tract to the drainage ditch from 1988 until 2003. According to Brett, no farm road existed over the disputed land while he was farming it. William Gettings also testified at the preliminary injunction hearing in 2003. William testified a dirt farm road did exist over the 5.09-acre parcel when he was a boy. However, according to William, the road ceased to exist when John Powers started farming the property in 1948.

¶ 63        We recognize the trial court presumably did not observe the testimony of plaintiff's witnesses at the hearing on the preliminary injunction in 2003. However, defendant did not raise this issue on appeal. The trial court did personally observe the testimony of James Powers and Frank Gimlin. The court did not find Frank's testimony about the road credible but did find James's testimony credible.

¶ 64　　　　The trial court was in a better position to determine which of these two men it found more credible regarding the alleged existence or nonexistence of the farm road during the alleged period of adverse possession. Our supreme court has stated that, under the manifest weight standard of review, a trial court's credibility determinations are subject to great deference in a bench trial. *Samour, Inc. v. Board of Election Commissioners of City of Chicago*, 224 Ill. 2d 530, 548 (2007). A reviewing court will not substitute its judgment "on credibility matters because the fact finder is in the best position to evaluate the conduct and demeanor of the witnesses." *Id.*

¶ 65　　　　Based on the evidence presented, the trial court determined the road did not exist on the property during the relevant 20-year period. As a result, the court did not need to concern itself with anything further about the alleged road because the boundary was defined, given the court's determination the road did not exist during the 20-year period. It is not the function of this court to conduct another trial. Based on the arguments made by defendant and the standard of review in this case, defendant has not established the court erred in determining plaintiff established she was legally entitled to the 5.09-acre parcel of land via adverse possession.

¶ 66　　　　　　　　　　　　　III. CONCLUSION

¶ 67　　　　For the reasons stated, we affirm the trial court's judgment in this case.

¶ 68　　　　Affirmed.